Wilson vs. Noonan.

which by law was void as between the parties to it at the time of the passage of the act.

*By the Court.*—Order affirmed.

## WILSON vs. NOONAN.

### *Libel.*

A publication by defendant states that a certain railroad project, important for the interests of Milwaukee, and requiring a grant of authority from the legislature, was opposed by a combination, of which one M. was at the head, and that what was most remarkable of all was, that the project was opposed by certain members of the state senate, including the plaintiff, and adds : " To those who know that M. is rich and unscrupulous, the reason why this is so need be no great secret. But it is a matter for the people, who are misrepresented by those faithless senators, to become enraged and apply a remedy. That money has been used to effect some of these railroad laws, we know. We have names, amounts and dates, so that there can be no mistake. How long shall the best interests of our city and our state be trifled with, and our citizens misrepresented by faithless and selfish senators?" etc., etc. *Held*, that these words charge plaintiff, *in his capacity as a senator*, with having been induced by pecuniary considerations to betray his public trust; and they are *prima facie* libelous.

APPEAL from the Circuit Court for *Milwaukee* County.

Action for libel. The alleged libelous words are stated in the complaint. The defendant appealed from an order overruling a demurrer to the complaint, as not stating a cause of action.

*I. P. Walker*, for appellant.

*A. C. Fraser*, for respondent, as to the rules of interpretation of alleged libels, cited Cowper, 272 (673); 9 East, 93 (94); 13 Mass. 248 (254); 3 Cow. 239, 240; 5 id. 515; 6 id. 77; 3

Barb. 633; 1 Denio, 358; 16 Pick. 57; 20 id. 216; 1 Starkie on Slander, 44; 11 Johns. 592; 19 Conn. 94; 1 Mees. & W. 244; 2 Wend. 536; 8 id. 577; 21 id. 71; 23 id. 424; 3 Hill, 632.

COLE, J.   We are of the opinion that the demurrer in this case was rightly overruled.   The action is for libel.   The defamatory publication is set forth in the complaint, accompanied with prefatory circumstances, colloquium and inuendoes, which apply the slanderous charge to the plaintiff.   It is contended that the complaint is defective, because it does not contain any publication of matter slanderous in itself, nor state such intrinsic facts as to show the actionable quality of the publication.   It appears to us that the article in question is *prima facie* libelous, and that it charges the plaintiff with having acted corruptly in his capacity as state senator.   This is the plain, obvious meaning of the article.   That a publication is libelous in its character which imputes to a person want of official integrity, and which charges that, in his official capacity, he was induced by some pecuniary or valuable consideration to act in any particular manner upon matters which came before him, is a proposition which does not admit of discussion.   Does the article impute to the plaintiff such corrupt conduct in his official action as senator?   Without giving the publication at length, it is sufficient for our present purpose to state its main parts.   The writer states that he understands from entirely reliable sources that the manager of the Milwaukee and Minnesota railroad had been authorized by the president of the Pennsylvania railroad and the gentlemen connected with him, to purchase the right of way alongside of the St. Paul road from Portage to La Crosse, and, as soon as authority from the legislature could be obtained to do so, to build another track, which would be of great advantage to the city of Milwaukee.   It is said that this company encountered

at the very threshold a most vigorous opposition from the Jenny Lind club and its train of venal mercenaries, and bought up hangers-on, who pretend to be the special friends and guardians of that city; and that at the head of this crusade stands Alexander Mitchell, etc. The writer proceeds to say: "But that which is most remakable is, that both senators from this county, Messrs. Larkin and *Wilson* — the senator from Washington county, Mr. Thorp — the senator from the eastern part of Dodge county, Senator Clark — and the senator from La Crosse and Monroe, Mr. Chandler — oppose, with all their might, all the liberal enterprises of this new company, and do every thing in their power to hinder the construction of a competing railroad from Milwaukee to La Crosse. To those who know that Alex. Mitchell is rich and unscrupulous, the reason why this is so need be no great secret. But it is a matter for the people, who are misrepresented by those faithless senators, to become enraged and apply a remedy. That money has been used to effect some of these railroad laws, we know. We have names, amounts and dates, so that there can be no mistake. How long shall the best interests of our city and of our state be trifled with, and our citizens be misrepresented by faithless and selfish senators?"

Now what idea is plainly conveyed by this language, and how would it naturally be understood by those who might read it? Clearly, as it appears to us, that the senators therein named were faithless to their public trusts, and had been induced by considerations of a pecuniary nature, in their capacity as senators, to do every thing in their power to hinder and defeat the construction of a competing railroad from Milwaukee to La Crosse, — a measure with which important public interests were connected. It is said that the article does not relate to the official action of the plaintiff, but merely to his opposition as a citizen. But this idea is refuted by the whole scope and tenor of the publication. It is not against the plaintiff as a

private individual that these strictures are made. But it refers to him as a senator, having the power to aid or to hinder and defeat proper legislation, and that, induced by corrupt and selfish motives, he had, in his official action, opposed "all the liberal enterprises of the new company." That new company was prepared to build another railroad track from Portage to La Crosse, as soon as authority could be obtained from the legislature to do so. But such authority could not be obtained, because corrupt means and influences were used to prevent it. And the plain import of the article is, that the plaintiff, as senator, was influenced in his official action by mercenary and corrupt considerations in opposing such legislation. It requires no authority to be cited in support of the doctrine that a publication of that character is libelous.

*By the Court.* — The order overruling the demurrer is affirmed.

Mr. Justice PAINE, having been of counsel for the plaintiff, did not sit in this case.