THE AUGUSTA EVENING NEWS *v.* RADFORD.

An article in a newspaper charging a public officer with unbecoming
and improper conduct merely to get fees, tends to expose him to
public contempt, and is therefore libelous. Accordingly, there
was no error in overruling a demurrer to a declaration which, in
effect, alleged the willful and malicious publication of an article
charging, in substance, that the plaintiff, who was a constable,
solicited business for the magistrates' courts by attending the
daily sessions of the recorder's court and inducing persons tried
therein to sue out unnecessary warrants against other persons,
the declaration further alleging that by such publication it was
intended to charge that the plaintiff did the acts mentioned for
the evil and corrupt motive of increasing his fees as a constable.

April 10, 1893. By two Justices. Argued at the last term.

Before Judge EVE. City court of Richmond county.
June 4, 1892.

Action of libel, by W. W. Radford against the
Augusta Evening News, a newspaper corporation, on ac-
count of the following publication :

### "IT SHOULD BE STOPPED.

" A style of soliciting business which the grand jury
should investigate.

" It is not a new sensation, but it is a very bad style
for Augusta, to solicit business for magistrate courts at
the daily levees of the recorder. The attention of the
Evening News was called this morning by Lieut. Hood
to this practice, and he pointed to constable W. W.
Radford on the outside of the court-room talking through
the window to Fannie Brooks, a prisoner seated in the
dock. The result was a peace warrant issued by Fannie
Brooks against Fannie Edwards. Both women were
before the recorder this morning, and fined $1 each for
a simple war of words. There was nothing serious
about the case, but now it will cost them trouble and
money to pay the cost, when there is no danger of any
assault being made by one on the other. This practice
should be stopped, even if the grand jury has to investi-
gate the matter."

The material allegations of the declaration are shown

in the decision.    A general demurrer was overruled, and the defendant excepted.

J. S. & W. T. DAVIDSON and W. T. GARY, for plaintiff in error.

MARCELLUS P. FOSTER, by brief, *contra.*

LUMPKIN, Justice.

At common law, it was not necessary that written or printed defamatory words should charge a crime in order to make them actionable, but it was sufficient if they tended to bring a man into public hatred, contempt or ridicule.    McGregor *v.* Thwaites, 3 B. & C. 33. " Scandalous matter is not necessary to make a libel; it is enough if the defendant induces an ill opinion to be had of the plaintiff, or to make him contemptible and ridiculous."    Crop *v.* Tilney, 3 Salk. 226.    And it has with great reason and justice been said that: " Written slander is necessarily attended with such deliberation, and its publication is so well calculated to produce permanent mischief, that an action may be maintained for the publication of written words when it could not be maintained for the publication of the same words by mere oral discourse."    See 13 Am. & Eng. Enc. of Law, 289–300, where the subject is discussed at length.    The definition of libel recognized at common law has been adopted by statute in this State.    " A libel is a false and malicious defamation of another expressed in print, or writing, or pictures, or signs, tending to injure the reputation of an individual, and exposing him to public hatred, contempt or ridicule."    Code, §2974.

To one holding public office there is especial reason for affording protection against the malicious and insidious thrusts of the traducer.    As a servant of the people, it is essential that he should enjoy their fullest confidence, respect and esteem.    Those entrusted with the performance of official duties should be pure, upright,.

conscientious and painstaking ; and public policy de-
mands that they should be unembarrassed by false and
unfounded expressions of distrust and contempt on the
part of those they serve.   An upright and faithful pub-
lic servant sustains special damage by reason of a de-
famatory publication which attacks his official character.
And this is said to be true, "whether the office be
merely confidential and honorary, or be productive of
emolument."   Folkard's Starkie on Slan. & Libel, §89.
"As regards language concerning one in office, the same
general principles apply as to language concerning one
in trade.   Language concerning one in office which im-
putes to him a want of integrity, or misfeasance in his
office, or a want of capacity generally to fulfill the
duties of his office, or which is calculated to diminish
public confidence in him, or charges him with the breach
of some public trust, is actionable."   Townshend on
Slan. & Libel, §196.   "It is libelous to impute to any
one holding an office, that he has been guilty of improper
conduct in that office, or has been actuated by wicked,
corrupt or selfish motives, or is incompetent for the
post."   Newell on Defam., Slan. & Libel, 69.   The
American & English Encyclopædia of Law (vol. 13,
p. 309) also employs the identical language just quoted,
and cites numerous decisions.  See, specially, Gove *v.*
Blethen, 21 Minn. 80.   Illustrations of the application
of the doctrine are numerous.   It is libelous to denomi-
nate a magistrate as "a damned fool of a justice,"
(Spiering *v.* Andrae, 45 Wis. 330, 30 Am. Rep. 744) ;
or to say he perjured himself in deciding a suit, "and
it is the G—d d——d erroneous decision I ever saw any
justice give, and it was a d——d outrage, and it was
done for spite" (Gove *v.* Blethen, *supra*) ; or to say a
judge lacked capacity, "had abandoned the common
principles of truth," and "had made the office of clerk
a subject of private negotiation between men to whom

he was under personal obligations, and endeavored to cancel those debts by a barter of office" (Robbins v. Treadway, 2 J. J. Marsh. 540); or to otherwise charge a judicial officer with gross impropriety, misconduct or corruption. (In the Matter of Moore, 63 N. C. 397; Royce v. Maloney, 58 V. 437.) The same is true as to a State senator (Wilson v. Noonan, 23 Wis. 105); and it is actionable to speak of a member of Congress as " a fawning sycophant, a misrepresentative in Congress, and a grovelling office-seeker," who had "abandoned his post in Congress in pursuit of an office." (Thomas v. Croswell, 7 Johns. 265.) "It is libelous to publish of one in his capacity of a juror, that he agreed with another juror to stake the decision of the amount of damages to be given in a cause then under their consideration, upon a game of draughts" (Com. v. Wright, 1 Cush. 46); or to denounce a verdict as infamous, and express contempt for the men who served as jurors, charging them with having "done injustice to their own oaths." (Byers v. Martin, 2 Colo. 605.) So, too, it is libelous to charge that a county attorney, "purely out of political fear," neglected to prosecute a certain person suspected of having committed a criminal offence (Larrabee v. Minnesota Tribune Co., 30 N. W. Rep. 462); or to publish that a village marshal permits gambling to be " carried on before his very eyes," and is guilty of inattention to duty and misconduct in the matter of making arrests. (Hay v. Reid, 48 N. W. Rep. 507.) Various other instances may readily be found by reference to the text-books above cited.

The plaintiff in the present case was a constable. He alleges in his declaration that the meaning and intent of the newspaper publication complained of was, to falsely and maliciously charge him with the questionable practice of attending the daily sessions of the recorder's court of the city of Augusta, for the purpose of

soliciting business for the magistrate's court of which he was constable; and to specially charge that in a given instance he was guilty of official misconduct in inducing a certain named prisoner to apply for and have issued a warrant against another " in a matter which had undergone investigation that day in said recorder's court, and been fully and finally determined so far as any necessity existed," there being no legal excuse or justification for the issuing of such warrant, and it being advised and brought about by the plaintiff " for the evil and corrupt motive of increasing his fees as such constable." Certainly, the article published in defendant's newspaper may be said to easily bear this construction; and that it is clearly libelous to falsely and willfully charge that a public officer, with the corrupt and sordid motive of personal gain, prostitutes the legitimate functions of his office, appears to us to be beyond question. Indeed, such has been the express ruling by the courts of last resort both in Michigan and in Wisconsin. In Bourreseau v. The Detroit Evening Journal, 63 Mich. 425, 30 N. W. Rep. 376, the publication charged that a deputy-sheriff, illegally and without justification, and solely with the view of increasing his fees, hung around the highways and arrested men whose only offence was that they were poor and ragged. In Eviston v. Cramer, 47 Wis. 659, 3 N. W. Rep. 392, the article published, while making no express charge of official misconduct, contained the innuendo that the plaintiff, while acting as "official sealer of weights and measures and as inspector of scales," " made a practice of 'tampering' with such weights and scales for the purpose of increasing the fees of his office." In passing upon a demurrer which had been filed to the action, the court said: " Now, that such statements are *prima facie* prejudicial to plaintiff, calculated to degrade him in public estimation, and bring him into public hatred and contempt, seems too

plain for discussion." We agree with Mr. Justice Cole, who delivered the opinion in that case.

It is insisted, however, that the publication in question was privileged. Under the allegations of the plaintiff's declaration, this contention cannot be maintained. Freedom of the press is, indeed, a matter of great public moment and concern, but the willful abuse of this liberty will not be tolerated by a court of justice; and if either the publisher of a newspaper or any private person abuses the right to publicly express his sentiments on any subject through the columns of a newspaper, he must defend himself upon the same legal ground. 13 Am. & Eng. Enc. of Law, 316. "The conduct of public officers is open to public criticism, but the imputation of bad motives or of criminal offences, unless there is so much ground for the imputation that a jury shall find some foundation for belief in them, is not such criticism. The publication must be strictly privileged, and have some probable cause." Neeb v. Hope, 2 Alt. Rep. 568. The plaintiff alleges, in substance, that the publication complained of was a false and malicious defamation, willfully intended to injure him both in his individual and in his official capacity, and that neither the author of the article, nor the publishers of the newspaper, had any reason to believe, or did in fact believe, that the libelous charge made against him was true. Whether or not there was probable cause for the belief on the part of the defendant that the information received by it was entirely reliable and trustworthy, and whether it acted in perfect good faith, or published the article willfully and maliciously with the intent alleged, were questions of fact which the jury alone could pass upon. *Pearce* v. *Bower*, 72 *Ga.* 243.

The trial judge properly overruled the demurrer filed to the plaintiff's declaration.　　　*Judgment affirmed.*