# WALTER P. BAVINGTON

*vs.*

# WILLIAM E. ROBINSON.

*Slander: malice; when presumed; priviliged communication; province of jury; burden of proof.*
*"Thief" and "Robber."*

Although malice is the essential of the action of slander, if the use of the slanderous words is established, malice is presumed, and need not be proved.                     p. 89

But in the case of privileged communications, the plaintiff is bound to prove the existence of malice as the real motive of the defendant's language.                     p. 89

A privileged communication is one made in good faith, upon a subject-matter, in which the party making it, has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty. p. 89

The effect of privilege is to rebut the inference or presumption of malice, and to that extent constitutes a good defense to an action of slander.                     p. 90

The question of whether words sufficient in themselves to raise the legal presumption of malice, were privileged, is a question of law for the Court to decide, and depends upon the circumstances leading up to and attending their utterance. p. 90

Even though words are held to be privileged, as a matter of law, if spoken in good faith, the question of malice. is still to be determined, and the burden of showing that there was actual malice is on the plaintiff, and any evidence tending to prove such malice should be submitted to the jury.          p. 90

In such a case, any evidence tending to show want of good faith may be offered to reverse the protection of privilege and show the existence of malice.          p. 90

When the facts are controverted, the Court should instruct the jury as to what facts constitute privilege, and leave to the jury the determination of whether such facts were proved. p. 90

In spite of the privileged character of words complained of, the plaintiff has the right to have the question go to the jury, if there is any evidence tending to show actual malice, when the words unreasonably impute crime, or the occasion of their utterance, by its unnecessary publicity or otherwise, shows a purpose wrongfully to defame the plaintiff.          p. 90

A debtor had given what was in form a bill of sale, but which was in reality a mortgage, covering, among other things, a crop of corn that had been cut, but still stood in the field; the debtor was to finish the making of the crop, sell the same and apply the proceeds to the debt; it had been agreed that he should wait, before selling the crop, until corn should reach a certain price; the creditor, meeting the debtor some time thereafter, in a crowded public place, asked about the corn, and, learning that the debtor had sold some, demanded the money and accused the debtor of robbing him; the debtor replied, that some of the money was in bank, that some of the corn had not yet been paid for, and that his father had collected some for him and, as he had not the full weight and account, he could not pay him that day; thereupon the creditor, in a loud and angry voice, publicly called the debtor a thief and warned him

that he would refer the matter to the State's Attorney; *held,* that in such a case the question of express malice should have been left to the determination of the jury.               p. 91

*Decided June 26th, 1914.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John S. Ensor* and *Harry S. Carver* (with whom was *John S. Young,* on the brief), for the appellant.

*Thomas H. Robinson* and *Carville D. Benson* (with *Benson & Karr,* on the brief), for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

This is an action of slander, in which, under the instructions of the Court below a verdict was rendered for the defendant, and from the judgment entered thereon the plaintiff appealed.

The declaration contained five counts. The alleged defamatory words set forth in the first count were: "Don't you (meaning the plaintiff) know you are stealing my corn? Well, you are;" in the second count, "Don't you know you are criminally liable? You are;" in the third count, "I (meaning the defendant) am going to see the State's Attorney, you (meaning the plaintiff) have been robbing me long

enough." The fourth and fifth counts restated the same charges. The defendant pleaded the general issue, and filed a special plea of justification to the second count. At the conclusion of the testimony for the plaintiff the Court directed a verdict for the defendant, on the ground that the alleged slanderous words were privileged and the plaintiff had failed to offer any proof of express malice; and it is from that ruling that the only question in this appeal arises, the several exceptions to the testimony having been abandoned by the appellant.

From the testimony it appears that the appellant is a young man engaged in farming and has canned tomatoes since 1906 in his home county, Harford, and on the Eastern Shore. The appellee is a canner and canned goods broker. The canning operations of the appellant had been financed since their beginning by the appellee until the difficulty which gave rise to this suit. The business of the appellant did not prosper to any considerable degree, and, in 1908, he gave to the appellee a bill of sale to cover the indebtedness to him of two thousand dollars. On the 8th day of November, 1909, the appellant gave another bill of sale to the appellee for one thousand and fifty dollars for a further indebtedness. The property under this bill of sale included two hundred and fifty barrels of corn, then in the field unhusked, the number of barrels being estimated, as well as a lot of farming machinery and some live stock, all of which remained in the possession of the appellant. On the 18th of December, 1909, the appellee loaned the appellant several hundred dollars on the joint note of the appellant and his father, payable two months after date. The appellant agreed with the appellee at this time, that the corn that was covered by the bill of sale should be hauled and sold by him and the proceeds therefrom applied to the payment of the note. It was not agreed, however, that it should be hauled at once, but in several conversations it was agreed that it should be held until it advanced to four dollars

a barrel. On February 21st, 1910, the appellant was stand-
ing in the corridor of the Bel Air Court House, talking
with some people, when the appellee called to him. After
the appellant had walked over to him the appellee said to
him: "How about that corn, have you hauled any of it
out?" Appellant told him he had hauled out about thirty-
five barrels. Upon the appellee demanding the money the
appellant told him he had part of it to his credit in bank,
a part his father, with whom he lived, had, and a part of
the corn had not been paid for, and that since he had not
the weights with him he could not tell how much he had
received, and, therefore, could not pay him that day. Where-
upon, shaking his finger at him, the appellee in a loud voice
spoke the words set out in the declaration. Several persons,
who were in the corridor of the Court House, testified as to
the use of these words and the manner of the appellee.

The only question presented is, should the Court have
ruled, upon this state of facts, that the appellee was entitled
to the protection of a privileged communication?

The law upon the subject of privilege is too well settled
to admit of serious controversy. The statement of the testi-
mony shows that if this is to be classed as a privileged com-
munication, it is of course a qualified privilege. Malice is
the essential of the action of slander, but it is not necessary
that it be proved; when once the slanderous words are proved,
malice is presumed.

However, when the words alleged to be slanderous, are
embraced in the class of privileged communications, the
plaintiff is bound to prove the existence of malice as the
real motive of the defendant's language. *Beeler* v. *Jackson,*
64 Md. 589. "A privileged communication is one made, in
good faith, upon any subject-matter in which the party com-
municating has an interest or in reference to which he has,
or honestly believes he has, a duty, to a person having a
corresponding interest or duty, and which contains matter

which, without the occasion upon which it is made, would be defamatory and actionable." *Newell on Defamation*, 388.

In *Garrett* v. *Dickerson,* 19 Md. 418, it was said: "The only effect of privilege on actionable words, is to rebut the inference or presumption of malice, and to that extent constitute a good defence in an action upon them. The question, whether words sufficient in themselves to raise the legal presumption of malice, are privileged, is one of law, determinable from the circumstances leading to and attending their utterance. It is to be observed that words ascertained to be privileged as matter of law, still involve the element or fact of good faith in speaking them, and that in general, evidence of any act or circumstance tending to show the want of good faith, may be offered to remove the protection of privilege, and show the existence of malice."

It is a question for the Court to decide, in the first instance, whether words alleged to have been slanderous were privileged by the occasion, assuming them to have been spoken in good faith, without malice, and in the belief that they were true; and if so privileged, then the plaintiff must show express malice in order to recover. And if there is any evidence tending to prove express malice, that question should be submitted to the jury. *Brown* v. *Hathaway,* 13 Allen, 239; *Fresh* v. *Cutter,* 73 Md. 87. But it is proper for the Court, where the facts are controverted, to instruct the jury as to what facts amount to privilege and leave it to the jury to determine whether those facts are proved. *Brainsfield* v. *Howeth,* 107 Md. 278. "But the plaintiff has the right notwithstandng the privileged character of the communication to go to the jury, if there be evidence tending to show actual malice, as when the words unreasonably impute crime, or the occasion of their utterance is such as to indicate, by its unnecessary publicity or otherwise, a purpose wrongfully to defame the plaintiff. * * * Expressions in excess of what the occasion warrants do not *per se* take away the privilege,

but such excess may be evidence of malice." *Fresh* v. *Cutter, supra.*

Applying the above principles to the facts of the present case, it is plain that the occasion of the utterance of the slanderous words was such as to throw upon the appellant the burden of showing express malice. We are also of the opinion that the Court was in error in ruling that there was no evidence tending to show the existence of malice.

Could the appellee have believed, from the facts known to him, that the appellant was guilty of crime? It is true he had a bill of sale upon the corn, but from the testimony it was a bill of sale in form only. It was clearly a mortgage. The only evidence in the case shows he had directed the appellant to sell the corn. When the appellant was in the act of carrying out this direction he was accused of a crime. Therefore, if the jury should find from the evidence that the accuser did not believe the accusation he had made was true, there would be a fact from which they could infer malice. The use of the words, "You have been robbing me long enough," might also tend to show malice, if the jury should think they were in excess of what the occasion demanded. Did not the facts tend to show, in the light of the knowledge the appellant had, that it was an unreasonable imputation of crime? If, then, the jury could have found from them malice, it was not for the Court to pass its judgment upon them, but to have left that question to be determined by the jury, with proper instructions from the Court.

> *Judgment reversed and new trial awarded,*
> *with costs to the appellant.*