21185.   PASCHAL *v.* GEORGIAN COMPANY.

DECIDED APRIL 14, 1931.

*Mitchell & Mitchell,* for plaintiff.
*Randolph & Woodruff, Donald Dunwody,* for defendant.

LUKE, J.  Mrs. Lillian Grace Paschal sued the Georgian Company for libel, and the only question to be decided by this court is whether the trial judge erred in sustaining the general demurrer to the petition.

The petition alleges that on February 1, 1930, the defendant published in the Atlanta Georgian, a newspaper owned, controlled, and published by it, the following libelous matter:

"JEALOUS HUSBAND STABS WIFE'S VISITOR.

"Irate Mate and Victim to face Court.  Both held on charges of Disorderly Conduct after eternal triangle affray.

"The curtain dropped temporarily Saturday on a love drama of real life based on the eternal triangle.  Two men and a woman are the principal characters, and the male leads will enact the next chapter Tuesday in Recorder A. W. Callaway's Court.  Leading roles in the play were enacted Friday night by LeRoy B. Paschal, 25, of Dunn Street, jealous husband, and Howard Edwards, 22, of 1179 Greenwood Avenue, and—Mrs. Paschal.  Here is the official record of the affair, filed by Patrolman J. E. Wiley with Captain A. J. Holcombe: I respectfully report the following stabbing which occurred at 5 p. m., January 31, in front of 1179 Greenwood Street:

"THREE WOUNDS.

'Howard Edwards, white man, 22 years old, of 1179 Greenwood

Street, was stabbed three times, once in the back, on the left shoulder, and in the left arm at the above time and place, by LeRoy B. Paschal, of 561 Dunn Street. Edwards stated he was in love with Paschal's wife, and had visited the Paschal home, and did not want to prosecute Paschal for the stabbing.'

## "PREFERRED CHARGES.

'Paschal came to police station and wanted Edwards locked up. I booked cases against both parties, but on account of Edwards' wounds he was given a copy and released by Captain Holcombe, and Paschal was locked up on a charge of stabbing. Edwards was treated at Grady Hospital. Paschal stated he went to Edwards' home after he (Edwards) had visited his home and cut him.

(Signed) 'J. E. Wiley.'

"When Paschal went to headquarters he was not generous in his attitude toward his admitted rival. 'Lock him up.' he urged. Charges of disorderly conduct were preferred impartially against both actors in the play. Paschal made $200 bond, and Edwards was released on his own recognizance, because of his wounds."

The petition next alleges that "said libelous matter first appeared in the 'evening edition' of said Atlanta Georgian, which appeared for sale on the streets at about 12 noon on February 1, 1930, and that "petitioner's husband . . informed the defendant . . that the story was false and libelous," but that "despite the warning referred to, . . the defendant company repeated the libel in the following form in the 'final home edition' of said paper, to wit:" Here the petition sets out substantially the article quoted above, with the following addition thereto: "Paschal told The Georgian Saturday that Edwards had been forcing his attentions on Mrs. Paschal for three months, and that he had been ordered from their home on numerous occasions. 'This fellow threatened to kill my wife yesterday when she refused to talk to him,' he said, 'and my wife and I have repeatedly warned him to keep away from her.' He said he and his wife had moved several times in an effort to rid themselves of Edwards' unwelcome attentions, and that he persisted in annoying her. 'I was away yesterday afternoon when he came to my home,' Paschal said. 'When I learned what had happened, and of the threats he made against my wife, I hunted Edwards up. I found him at his home, and attempted to put a stop to the affair the best way I could.'"

We next quote paragraph 7 of the petition: "Petitioner alleges that the intent of said article and words was to raise the impression in the mind of the readers of said paper that this affray referred to had been caused: (a) By jealousy of plaintiff's husband towards the said Howard Edwards, and that said jealousy was justified by reason of the fact that plaintiff had been entertaining one Howard Edwards in her home without her husband's knowledge and consent. (b) By the anger of her husband, caused by adulterous relations between plaintiff and Howard Edwards."

It will be observed that the alleged libel is based upon two articles published in different editions of the same paper on the same day. Therefore, in passing upon the demurrer, these two articles are to be construed together. "In cases of this sort the publication or conversation must be construed as a whole, and in the sense in which it is evident the language was intended to be used. Under this rule, words ordinarily harmless may from the context convey such a meaning as to give ground for an action. On the other hand, words which are sometimes actionable may, when taken in connection with the entire article, be deprived of their usual sting and afford no ground for a recovery." *Watters* v. *Retail Clerks Union*, 120 *Ga.* 424, 426 (47 S. E. 911). "Moreover, the office of an innuendo is to explain what is doubtful or ambiguous in meaning in the language employed in an alleged libel or slander, but it can not enlarge the meaning of the words plainly expressed therein. If such language is plain and unambiguous, and does not impute a criminal offense, its meaning can not be enlarged and extended by an innuendo." *Spence* v. *Johnson*, 142 *Ga.* 267, 269 (82 S. E. 646, Ann. Cas. 1916A, 1195). That decision follows the definition of an innuendo given in *Park* v. *Piedmont &c. Life Ins. Co.*, 51 *Ga.* 510. To the same effect is *Morris* v. *Evans*, 22 *Ga. App.* 11, 12 (95 S. E. 385).

Construing the alleged libelous matter in the light of the foregoing well-established rules of law, we are satisfied that the petition does not set out a cause of action. Therefore, the trial judge did not err in sustaining the demurrer and dismissing the petition.

*Judgment affirmed.* *Broyles, C. J., and Bloodworth, J., concur.*