33040, 33041. ATLANTA JOURNAL CO. *v.* DOYAL; and
*vice versa.*
33042, 33043. NIX *v.* DOYAL; and *vice versa.*

DECIDED JUNE 8, 1950. REHEARING DENIED JULY 31, 1950.

323

*Arnold, Gambrell & Arnold*, for plaintiffs in error.

*Houston White*, contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ Grounds 3, 4, 5, 6, 7, 8, 9, and 10 of the demurrers attack paragraphs 11, 12, 13, 14, 15, 17, 18, and 21 of each count of the petition on the grounds that the attached exhibit containing Mrs. Carpenter's testimony speaks for itself, that the paragraphs contain conclusions not authorized by the language of the exhibits, and that the plaintiff, having pleaded the exhibits, should let them speak for themselves instead of attempting to set up conclusions as to the meaning of the language therein contained. The defendants contend that the exhibit shows on its face that the transcript of the record attached as an exhibit reveals the newspaper account to be a fair and honest report of Mrs. Carpenter's testimony concerning the plaintiff so far as the gambling activities are concerned, and that said transcript also affirmatively shows that said testimony was not ruled out, as contended in the petition.

Paragraph 21 of the petition states, "that said article charged petitioner (1) with being a gambler; (2) with taking part in a dice game; (3) with attendance at night in the company of other persons who were named and identified as gamblers." It further alleges that each of said charges is untrue. It is necessary to examine the newspaper reports and compare them with the transcript of testimony in the case in order to determine (1) whether the newspaper article contains the information alleged, and (2) whether this information, if contained therein, is a fair and honest report of Mrs. Carpenter's testimony on the

stand. Although the main headlines in the two editions of the paper, referred to in counts 1 and 2 respectively, differ, there is in each the identical subhead, "Group Played Dice." Following this the article continues:

" 'But he asked you to name the gamblers that came there,' Judge Moore told her. 'Can you name them?'

" 'Fortunte Kusic, Andy George, Charlie Kenimer'. . . Mrs. Carpenter paused and then added, 'and Shorty Doyal was there that night.'

"She added that Roy Reeves was also there.

"Mr. Thomas asked her to name other gambling participants, but Judge Moore on objection said that she had named enough.

"Judge Moore asked whether they were playing cards or shooting dice.

" 'Dice, but he was pretty good at cards', Mrs. Carpenter replied, speaking of Judge Carpenter."

From the transcript of testimony as set out in the statement of facts, it is apparent that Mrs. Carpenter testified in answer to the question, "Do you know the names of known gamblers that you refused to have in your home?" that she answered "about the gamblers who came into my home one night when I was not there" with a series of names, one of which was that of the plaintiff. Although her testimony was hearsay and the publications so indicated, she charged him with being a gambler and with attendance at night in the company of other persons who were named and identified as gamblers. But her testimony as to the dice game, together with the question of the trial court regarding dice and her answer thereto, did not refer to the occasion in Atlanta when the named persons came to her home, but to another occasion in Nashville, Tenn. A special demurrer, being a critic, must itself be perfect. If such a demurrer attacks the entire paragraph, and any portion of such paragraph is not subject thereto, the demurrer is properly overruled. See *Carusos* v. *Briarcliff Inc.*, 76 *Ga. App.* 346 (45 S. E. 2d, 802). Grounds 3 and 6 were therefore properly overruled. Grounds 5 and 7 of the special demurrers which attack paragraphs 13 and 15 of each count of the petition wherein it is alleged that Mrs. Carpenter did not testify that the plaintiff was a gambler and was in the apartment of Judge Carpenter with other per-

sons named as gamblers should have been sustained. These paragraphs of the petition constitute conclusions of the pleader which are not supported by the specific allegations of the exhibit showing the exact testimony of Mrs. Carpenter. It there appears that Mrs. Carpenter did testify (by hearsay testimony) that the plaintiff was a gambler and that he was in the apartment of Judge Carpenter at night in company of other persons named by her as gamblers.

Paragraphs 17 and 18 of the petition are as follows: "Petitioner alleges that said Mrs. Carpenter did testify that it was her understanding that Shorty Doyal was in her apartment that night when Fortune Cucich (sic), Andy George and Charlie Kenimer, whom she named as gamblers, were there, but she did not testify of said fact of her own knowledge, and upon objection by counsel for Judge Carpenter that such statement was hearsay, Judge Moore ruled out as hearsay said statement with reference to her understanding that your petitioner was there that night. Said published article did not report that said 'understanding' of Mrs. Carpenter was hearsay and was stricken by the court as hearsay evidence, but reported that said witness had testified as a positive fact that petitioner was there on said night." The transcript of the evidence attached as Exhibit B and made a part of both counts of the petition shows that Mrs. Carpenter was asked by the court to name some of the persons to whose presence she objected in her home by reason of their being big time gamblers. To this question Mrs. Carpenter answered:

"Fortune Cusic, Andy George, Charlie Kenimer; Understand—

"Mr. Rankin: Your Honor, I object to what—

"Witness: Shorty Doyal was there that night.

"Mr. Rankin:—she's been told. I move to exclude that.

"The Court: Rule out—

"Witness: Wait a minute, I will get them—wait a minute— Roy Reeves.

"Mr. Thomas: Roy Reeves?

"A.: Yes. These are not the people that—

"The Court: Well, now, she's named several, Brother Thomas, go ahead now."

It is contended by the plaintiff that the words "understand"

and "rule out" are ambiguous, and that the general allegations relative thereto are permissible to explain the ambiguities. He cites as authority *Slater* v. *Savannah Sugar Refining Corp.,* 28 *Ga. App.* 280, 283 (110 S. E. 759). This legal principle is sound but inapplicable here. Had the plaintiff desired, he need not have attached the exhibit, and his allegations regarding this testimony would have been taken as true on demurrer. However, he did attach the exhibit, and his purpose in doing so must be treated as a method of testing whether or not the general allegations of the petition are· conclusions warranted by the specific allegations as set forth by the exhibit.

It is obvious from the state of the record that whatever the court had in mind when he began the sentence, "Rule out . ." he did not complete his thought, and he did not make any ruling which could be considered by this ̄court. The allegations are therefore in conflict and inconsistent with the pleaded exhibit. "Certainty of statement is one of the great aims of pleading; and this can not be attained if the plaintiff in the same count be permitted to base his case upon inconsistent allegations." *Central of Ga. Ry. Co.* v. *Prior,* 142 *Ga.* 536 (83 S. E. 117). The word "understand" in the witness's testimony, and the words "rule out" in the court's uncompleted sentence are not merely ambiguous; they are meaningless. This is no case involving the construction of a contract, where the intention of the parties may be ascertained by parol evidence. We are dealing here merely with what was said, not with what was intended to be said, since a libel action cannot rest upon mind reading. . The plaintiff has, in effect, pleaded the exact evidence upon which he obviously intends to rely. Considered as pleading, the allegations are specific that the witness named Shorty Doyal as being in the apartment that night, and that this hearsay testimony was not ruled out. The general allegations in the petition must yield thereto. It follows that paragraphs 17 and 18 were subject to the 8th and 9th grounds of demurrer, and that these grounds should have been sustained.

■ Generally, any defamatory statement, written or oral, is actionable when published. Code, §§ 105-701, 105-702. Generally, also, a republisher of a defamatory statement is equally liable with the original publisher thereof. *Crowe* v. *Constitution*

*Pub. Co.,* 63 *Ga. App.* 497 (11 S. E. 2d, 513) ; *Constitution Pub. Co.* v. *Kirkland,* 169 *Ga.* 264 (149 S. E. 869). No liability, however, attaches to a republication of such defamatory matter if the republication thereof is privileged. Under the provisions of Code §§ 105-704 and 105-709 (4) "fair and honest reports of legislative or judicial bodies" are deemed privileged communications. "In an action for libel, that a writing constituted a privileged communication is generally a matter for plea. *Holmes* v. *Clisby,* 118 *Ga.* 820 (2) [45 S. E. 684]; *Flanders* v. *Daley,* 120 *Ga.* 885 (4) [48 S. E. 327]: But if it appears upon the face of the petition that the communication was really privileged, there seems to be no good reason why this might not be taken advantage of by demurrer." *Atlanta News Co.* v. *Medlock,* 123 *Ga.* 714, 721 (51 S. E. 756). Thus, should it appear from the petition itself that the allegedly defamatory matter was indeed privileged, the privilege would constitute a bar to recovery and subject the petition to general demurrer. This rule is subject to the exception embodied in Code § 105-706, for if the privilege is not absolute, but conditional only, the existence of express malice would still render the libel actionable.

Whether or not, beyond the provisions of Code § 105-711 relating to allegations in pleadings, there exists in this State any communication at all which is *absolutely* privileged (see, in this connection, *Francis* v. *Wood,* 75 *Ga.* 648; *Wilson* v. *Sullivan,* 81 *Ga.* 238, 7 S. E. 274; *Buschbaum* v. *Heriot,* 5 *Ga. App.* 521, 63 S. E. 645; *Ivester* v. *Coe,* 33 *Ga. App.* 620, 127 S. E. 790) whereby all inquiry into the question of good faith is closed (*Atlanta News Co.* v. *Medlock,* supra) it is clear that the communications enumerated in Code §§ 105-704 and 105-709 are only conditionally privileged. *Fedderwitz* v. *Lamb,* 195 *Ga.* 691 (25 S. E. 2d, 414). It follows, therefore, that the defendants' contention that the article written by Nix and published by the Atlanta Journal is absolutely privileged so as to subject the petition to general demurrer is untenable. Being a report of judicial proceedings the article is only conditionally or qualifiedly privileged.

■ The general demurrers also attack the petition on the ground that it shows on its face that the report is fair and honest. "Qualified privilege is not a right to publish, but rather it

is the right to be free from legal liability for libel when and if fair, accurate and nonmalicious reports of judicial, legislative and other proceedings are published." Thayer, Legal Control of the Press, p. 311. As discussed in the first division of the opinion, so far as regards the charge that the defendants falsely accused the plaintiff of gambling with dice, the newspaper account differs from the testimony of the witness being reported. Counsel for the defendants insist, however, that the newspaper report need not be verbatim and that mere inaccuracies not affecting the purport of the article are immaterial. Conklin *v.* Augusta Chronicle Pub. Co. (Ga.) 276 Fed. 288; Vaughan *v.* News Leader Co., 105 Fed. 2d, 360; 53 C.J.S., Libel and Slander, § 127. They contend that since the court proceeding contains a reference to "big time gamblers" omitted from the article, and Mrs. Carpenter having named the plaintiff as one of a group of "gamblers" who came to her home, the heading, "Group Plays Dice," if construed to apply to the plaintiff, harms him no more than the other statements made and quoted, and is, if anything, an immaterial inaccuracy productive of no injury to him. In considering newspaper accounts, the headlines should be considered as an integral part thereof. *Augusta Chronicle Pub. Co.* v. *Arrington,* 42 *Ga. App.* 746 (157 S. E. 394) ; *Paschal* v. *Georgian Co.,* 43 *Ga. App.* 195 (158 S. E. 372) ; 59 A.L.R. Ann. 1061.

To state that a person is gambling with dice is to charge him with a violation of law (Code § 26-6404) and is a libel per se. But where "what the publication stated the court had done was no more harmful than what the court actually did" there is no libel per se. *Harrison* v. *Constitution Publishing Co.,* 41 *Ga. App.* 102, 106 (152 S. E. 131). However, where in a report of a court proceeding, the newspaper article goes further and adds additional defamatory matter, such additions, if false, render the whole publication unprotected by the privilege. *Augusta Chronicle Pub. Co.* v. *Arrington,* supra; Edsall *v.* Brooks, 17 Abb. Pr., (N.Y.) 221; Merrill, *Newspaper Libel,* p. 184; Townsend, *Slander and Libel,* p. 369; Thayer, *Legal Control of the Press,* p. 320; Starkie, *Slander and Libel,* p. 288; Odgers, *Slander and Libel,* p. 315, 320. The language of an alleged libel must be construed, not by what the writer intended

to mean, but by the construction which would be placed upon it by the average reader. *Southeastern Newspapers Inc.* v. *Walker,* 76 *Ga. App.* 57, 60 (44 S. E. 2d, 697). Whether or not the transposition of the quotation and the addition of the words "with dice" are an immaterial inaccuracy or an unauthorized enlargement of the witness's statements, as well as whether or not the average reader would construe the report to mean that the plaintiff gambled with dice, are questions for the jury. *Holmes* v. *Clisby,* 118 *Ga.* 820 (45 S. E. 684); *Brandon* v. *Arkansas Fuel-Oil Co.,* 64 *Ga. App.* 139 (12 S. E. 2d, 414); *Cheshire* v. *Hightower,* 33 *Ga. App.* 793 (127 S. E. 891); *Central of Ga. Ry. Co.* v. *Sheftall,* 118 *Ga.* 865 (1) (45 S. E. 687). The rule which makes it a jury question as to whether language ambiguous within itself is or is not defamatory should apply equally to a situation involving improper arrangement within a news report of material otherwise correctly quoted. If the effect thereof is to injure the reputation of another or expose him to public hatred, contempt or ridicule because of a false construction which would necessarily be placed upon the words, then such publication is libelous. *Augusta Evening News* v. *Radford,* 91 *Ga.* 494 (17 S. E. 612, 20 L.R.A. 533, 44 Am. St. R. 53); *Kirkland* v. *Constitution Publishing Co.,* 38 *Ga. App.* 632 (144 S. E. 821); *Stewart* v. *Swift Specific Co.,* 76 *Ga.* 280 (2 Am. St. R. 40); *Stein* v. *Lazarus,* 33 *Ga. App.* 791 (128 S. E. 696); *Wood* v. *Constitution Pub. Co.,* 57 *Ga. App.* 123 (194 S. E. 760); *Abernathy* v. *News Pub. Co.,* 45 *Ga. App.* 693 (165 S. E. 924).

Where as a matter of law the petition, when construed most strongly against the pleader, discloses that the written statement does not, either directly or by innuendo, injure the reputation of the plaintiff or expose him to public hatred, contempt, or ridicule, it must be dismissed on general demurrer. *Ajouelo* v. *Auto-Soler Co.,* 61 *Ga. App.* 216 (6 S. E. 2d, 415); *James* v. *Brandon,* 61 *Ga. App.* 719 (7 S. E. 2d, 305). But ordinarily "the question as to what effect would be produced upon the public by reading the words employed in the publication, as also the determination of the question whether or not the tendency of the alleged publication was to bring the petitioner into hatred, contempt or ridicule, is an issue of fact for the jury, and not a matter to be determined as matter of law by the court. As a

general rule, the question whether a particular publication is libelous, as well as whether the alleged libelous matter was published of and concerning the plaintiff, is a matter of fact to be determined by the jury." *Horton* v. *Georgian Co.*, 175 *Ga.* 261 (2) (165 S. E. 443). See also *Whitley* v. *Newman*, 9 *Ga. App.* 89 (1) (70 S. E. 686); *McIntosh* v. *Williams*, 160 *Ga.* 461 (128 S. E. 672). This being a jury question, in that the petition does not show on its face that the report was fair and honest, but rather shows a state of facts under which the jury would be authorized to find that the contrary was true, the court properly overruled the general demurrers to both counts of the petition as to both defendants, and ground 4 of the special demurrer attacking paragraph 12.

■ ■ Grounds 15 and 16 of the special demurrer and ground 7 of the renewed demurrer attack paragraphs 35 and 36 of the original petition and paragraph 7 of the amendment on the ground that no basis is shown for awarding punitive and general damages respectively. Ground 12 of the demurrer attacks those paragraphs which set out the injury to the plaintiff's feelings and reputation. No special damages are claimed. The petition alleges generally that the articles in question have destroyed public confidence in the petitioner, injured him in his profession of teaching and coaching, held him out to the public as a gambler and hypocrite, tended to destroy the confidence of employers and fellow teachers in him, undermined and besmirched his reputation, brought him into ridicule, and made him the butt of jokes in public places. These allegations are material to throw light on the amount of damage sustained by the plaintiff, and ground 12 of the demurrer was properly overruled. See *Augusta Chronicle Pub. Co.* v. *Arrington,* supra. It is not alleged that the plaintiff has suffered any loss of employment or monetary deprivation, and it appears from the pleadings that the entire injury is to his reputation and feelings. The allegations of the petition are sufficient to authorize a jury to find upon proof thereof that the publications constituted a libel per se, in which case general damages are recoverable without proof of special damage. *Weatherholt* v. *Howard*, 143 *Ga.* 41 (84 S. E. 119). The proper measure of damages, as prescribed by Code § 105-2003, is limited only by the enlightened

conscience of impartial jurors. *Franklin* v. *Evans,* 55 *Ga. App.* 177 (189 S. E. 722); *Ingram* v. *Kendrick,* 48 *Ga. App.* 278 (172 S. E. 815). Paragraph 36 was not subject to the attack made thereon by the 16th ground of special demurrer, and this ground was properly overruled.

 Code § 105-2002 provides as follows: "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." Paragraph 35 of the petition asks for punitive damages in order to deter the defendants from repeating the said wrongful and malicious tort against your petitioner. Malice is an aggravating circumstance, and upon proof thereof punitive damages may be awarded to deter the wrongdoer (but not for wounded feelings under Code § 105-2002), and this is true even though the measure of damages is limited only by the enlightened conscience of impartial jurors, as provided by Code § 105-2003. See *Franklin* v. *Evans,* supra; *Barker* v. *Green,* 34 *Ga. App.* 574 (130 S. E. 599). Our Code, § 105-706, provides as follows: "In all actions for printed or spoken defamation, malice is inferred from the character of the charge. The existence of malice may be rebutted by proof, which in all cases shall go in mitigation of damages, and in cases of privileged communications it shall be in bar of the recovery." As stated in *Ajouelo* v. *Auto-Soler Co.,* 61 *Ga. App.* 216, 222 (supra): "Malice in the law of defamation may be used in two senses. First, in a special or technical sense to denote absence of lawful excuse or to indicate absence of privileged occasion. Such malice is known as 'implied' malice or 'malice in law.' There is no imputation of ill will with intent to injure. Second, 'malice' involving intent of mind and heart, or ill will against a person, and is classified as 'express malice' or 'malice in fact.'" Proof that the communication is privileged rebuts the prima facie presumption of malice in law. Holmes *v.* Royal Fraternal Union, 222 Mo. 556 (121 S.W. 100). However, for a report of judicial proceedings to be privileged it must have been a fair and honest report, and, as outlined in the previous division of this opinion, it is for the jury to determine whether or not it was fair and honest.

If not, it is not privileged. Malice may then be inferred from the character of the charge, and its existence may be rebutted by proof, want of actual malice then going in mitigation of the damages. *Pearce* v. *Brower*, 72 *Ga.* 243. As was aptly stated in Snively *v.* Record Pub. Co., 185 Cal. 565 (198 Pac. 1): "On the subject of actual malice it is important to note further that while one may, on a privileged occasion and without malice, publish to the interested persons what may be false, if he honestly believes it to be true, he is not by this rule given a license to overdraw, exaggerate, or to color the facts in his communication. The manner of the statement is material upon the question of malice, and if the facts believed to be true are exaggerated, overdrawn, or colored to the detriment of plaintiff, or are not stated fully and fairly with respect to the plaintiff, the court or jury may properly consider these circumstances as evidence tending to prove actual malice, and they may be sufficient for that purpose without other evidence on the subject."

It should be further noted that, should the jury find the report to be fair and honest, they would then consider the evidence in the case regarding malice on the part of the defendants for the purpose of deciding whether or not the privilege extended the publisher of the libelous material was used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege was granted. Code, § 105-710. The only effect of privilege is to require the plaintiff to prove actual malice. Bavington *v.* Robinson, 124 Md. 85 (91 Atl. 777); *Johnson* v. *Bradstreet Co.*, 77 *Ga.* 172 (b) (4 Am. St. R. 77). If the jury finds that such actual malice exists, punitive damages may be awarded under this theory. Ground 15 of the demurrer attacking paragraph 35 of the petition was in consequence properly overruled.

Aside from the general averment that the article was maliciously published, paragraph 22 of the petition contains the following specific allegation: "That the defendant Nix wrote said article, well knowing same was untrue, for the spiteful and malicious purpose of destroying petitioner's reputation and exposing him to public hatred, contempt and ridicule. On the 7th day of November, 1949, after a meeting of the Fulton County Commissioners, defendant Nix stated to petitioner that he would

put petitioner in his grave many years before his time with the articles he would write about petitioner in his paper, meaning The Atlanta Journal." By amendment the following is added: "That at the time defendant Nix made said statement to petitioner, Nix was in the course of gathering news to defendant the Atlanta Journal Company and was acting within the scope of his authority and employment by said company. In making said statement defendant Nix was acting within the scope of his authority and employment." This allegation is sufficient, as against general and special demurrer, to show malice on the part of Nix under the above rules. It is sufficient to show that he acted as agent of the newspaper in gathering news. *Ivins* v. *L. & N. R. Co.*, 37 *Ga. App.* 684 (2) (141 S. E. 423); *Conney* v. *Atlantic Greyhound Corp.*, 81 *Ga. App.* 324 (58 S. E. 2d, 559). It is also sufficient as a basis for the allowance of punitive damages, which are properly allowed in cases involving malice or wilful misconduct. *Investment Securities Corp.* v. *Cole*, 186 *Ga.* 809, 810 (199 S. E. 126). The question next arises whether it is sufficient to impute malice to the principal, the Atlanta Journal Company. It is recognized that a corporation can act only through its agents, and that the malice of one having the direction and control of the corporation is, in contemplation of law, the malice of the corporation. Arkansas Harbor Terminal Ry. Co. *v.* Taber (Tex.) 235 S. W. 841. Few cases have been found which deal with the exact point of imputation of malice in libel cases, but the general rule was formerly that the malice of one defendant in a libel suit cannot be imputed to the co-defendant without connecting proof. See Krug *v.* Pitass, 162 N. Y. 154 (56 N. E. 526); Egan *v.* Dotson, 36 S. D. 459 (155 N.W. 783); Robertson *v.* Wylde, 2 Moo. & Rob. 191; Clark *v.* Newsam, 1 Exch. 131; Stevens *v.* Sampson, 5 Ex. D. 56; Odgers, *Libel and Slander*, p. 369. The American cases above cited seem to follow the earlier English rule laid down in Clark *v.* Newsam and Robertson *v.* Wylde, supra. However, in England the doctrine has been broadened, and it has been held in more recent cases that the malice of the agent is imputable to the principal so as to deprive the defendant of the defense of privilege, in which case he would have to rely upon a plea of justification to prevail. See Citizens Life Assurance Co. Ltd. *v.* Brown, A.

C. 423; Finburgh *v.* Moss' Empires Ltd., S. C. 928; Fitzsimons *v.* Duncan, 2 Ir. R. 483. In the Duncan case it was held as follows: "In the present case Duncan in the course of his authorized employment took advantage of the opportunity to gratify his personal malice, yet between them the libel was published so as to inflict the wrong, and thereby damage was caused to the plaintiff, and each and every one concerned in the common transaction is liable to the plaintiff in libel."

In America, the Pitass case was later discussed and limited to the facts set out in that case in the decision of Crane *v.* Bennett, 177 N. Y. 106 (69 N.E. 274). The history of the evolution of this rule therefore seems to be that our American courts in Krug *v.* Pitass, supra, and Egan *v.* Dotson, supra, were following the English rule as originally laid down that malice cannot be imputed in libel cases. The limitation of the Krug case by the Crane case, supra, and the modification of the rule by the English courts to the effect that such malice is imputable establishes the later rule as the better authority in this country.

The Georgia rule is, of course, that the conduct of the servant is imputable to the master whether or not the act of the servant was malicious, provided it was within the scope of his authority. See *Frazier* v. *Southern Ry. Co.*, 200 *Ga.* 590 (37 S. E. 2d, 774). It has long been the law in this State that where an agent tortiously commits a malicious act which is otherwise within the scope of his authority, his bad faith may be considered to increase the damages. See *Georgia Ry.* v. *Homer,* 73 *Ga.* 251 (8). Also in this State the conduct of the servant is imputable to the master whether or not the act of the servant is malicious, provided it is within the scope of his authority. Taking into consideration the history of the rule that malice cannot be imputed, as held in the earlier English cases, the modification of that rule by later English decisions, and the general rule in this State that bad faith on the part of the agent may be considered to increase the damages, as applied to principals and agents generally, and not confined to libel cases, we think the sounder theory is that where the agent of a newspaper whose duty it is to gather news to be published in the newspaper and while acting in the scope of his authority in this connection causes a publication to appear in the paper maliciously, that

his malice is imputable to the newspaper. We can find no sound reason for excepting from the general rule libel cases only.

■ In the cross-action the plaintiff complains of the judgment of the trial court sustaining ground 14 of the original demurrer and ground 4 of the renewed demurrer attacking paragraph 34 of each count of the petition. This paragraph alleges: "As a result of the bad faith of defendants, petitioner is entitled to recover expenses of litigation in the amount of $1500 against defendants, jointly and severally; that said $1500 alleged as expenses of litigation covers attorney's fees for the purpose of prosecuting count I of this suit, which attorney's fees petitioner alleges are fair and reasonable." The same allegation is made as to count II. Code § 20-1404 provides as follows: "The expenses of litigation are not generally allowed as a part of the damages, but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." All three elements need not be present; it is sufficient if there is one of them. *O'Neal* v. *Spivey,* 167 *Ga.* 176 (3) (145 S. E. 71); *West* v. *Haas,* 191 *Ga.* 569 ( 13 S. E. 2d, 376). Attorney's fees are sought here on the ground of bad faith. The bad faith referred to, in actions sounding in tort, means bad faith in the transaction out of which the cause of action arose. *Grant* v. *Hart,* 197 *Ga.* 662, 672 (30 S. E. 2d, 271). In this instance it refers to bad faith in publishing the alleged libelous articles upon which the action is based. The intention with which an act is done determines whether it is in good or bad faith. *Georgia R. & Bkg. Co.* v. *Gardner,* 115 *Ga.* 954 (42 S. E. 250). If the publication were made in good faith as a matter of public news interest it is difficult to see how, even though it might be actionable because inaccurate, it could be made the basis of obtaining attorney's fees under this section. An injury to the reputation is a trespass. *Cox* v. *Strickland,* 120 *Ga.* 104, 107 (47 S. E. 912). A mere innocent or negligent trespass will not supply grounds for recovery of attorney's fees under this section. *Ga. R. & Banking Co.* v. *Gardner,* supra. Nor will mere legal or constructive malice. But a trespass which is wilful and malicious in fact is in bad faith. *Tenn., Ala. & Ga. Ry. Co.* v. *Zugar,* 193 *Ga.* 386 (18 S. E. 2d, 758). It was further stated

in *Holmes* v. *Clisby,* 118 *Ga.* 821 (supra), that a wilful false-hood can never be uttered in good faith. The allegations that the articles in question were unfair and dishonest reports, wil-fully and maliciously made, are sufficient allegations of bad faith, provided that on the trial of the case they are supported by evidence of falsity, actual malice, and intentional misconduct, to authorize the jury to award attorney's fees. The trial court accordingly erred in sustaining grounds 14 of the original and 4 of the renewed demurrers.

■ Paragraph 32 of the petition is attacked by ground 13 of the special demurrer, which was sustained by the court, and this ruling is complained of in the cross-bill of exceptions. The paragraph contains conclusions not supported by allegations of fact, and ground 13 of the demurrer was therefore properly sus-tained.

On the main bills of exceptions the judgments of the trial court overruling the general demurrers are without error, as are also the judgments overruling all grounds of special de-murrers except as hereinafter set forth. The judgments over-ruling grounds 5, 7, 8, and 9 of the special demurrers on the main bills of exceptions are error.

The judgments of the trial court are without error as to cases 33041 and 33043 on the cross-bills of exceptions, except the judg-ment sustaining grounds 14 of the original and 4 of the renewed demurrers to paragraph 34 of the petition, which judgment was error.

*Judgment affirmed in part and reversed in part on the main bills and cross-bills of exceptions. MacIntyre, P.J., and Gard-ner, J., concur.*