20646.   AUGUSTA CHRONICLE PUBLISHING COMPANY
*v.* ARRINGTON.

DECIDED FEBRUARY 18, 1931.

*Pierce Brothers,* for plaintiff in error.

*Fleming & Fleming,* contra.

STEPHENS, J. (After stating the foregoing facts.) It appears, from the allegations of the petition, that a part of the alleged published matter was matter appearing upon the records of the recorder's court. Whether the publication to this extent was privileged under section 4433 of the Civil Code of 1910, as being the report of the proceedings of a judicial body, or of court proceedings, or a truthful report of information received from an arresting officer or police authorities, it is unnecessary to determine, since the publication goes further, and, beyond containing a mere account of the facts appearing upon the docket of the recorder's court, categorically and unequivocally refers to the plaintiff's conduct as "the theft," and in the same manner charges the plaintiff with obtaining possession of another person's false teeth and "cramming" them into his own mouth and running away. The characterization of the plaintiff's conduct as being a "theft," and the statement that he took another person's false teeth and ran away with them, when taken in connection with the publication of the matter appearing upon the docket of the recorder's court to the effect that the plaintiff was charged with larceny of the teeth, constitute a charge by the defendant, by a publication in its newspaper, not only that the plaintiff had been arrested on a charge of larceny of the teeth, but that the plaintiff had in fact committed a larceny of the teeth, and had run away with them. The language is at least susceptible to this construction. Under this view it is a question of fact for a jury whether it constituted libel as alleged. See *Beasley* v. *Reid,* 68 *Ga.* 380. While a newspaper is privileged to publish a fair and honest report of a court proceeding, or a truthful report of information received from an arresting officer or police authorities (Civil Code of 1910, § 4432), the publication is not privileged when the newspaper, in undertaking to publish only an account of a court proceeding, or the report of information

given by an arresting officer or the police authorities, amounting only to a mere charge by the arresting officers or the police authorities of the commission of a crime, goes further and publishes a statement that the person charged with the commission of the crime is in fact guilty of the crime. Tresca v. Maddox, 11 La. Ann. 206 (66 Am. D. 198) ; Jastrzembski v. Marxhausen, 120 Mich. 677 (79 N. W. 935) ; Moore v. Dispatch Publishing Co., 87 Minn. 450 (92 N. W. 396) ; Hayes v. Press Co., 127 Pa. 642 (18 Atl. 331, 5 L. R. A. 642, and note, 14 Am. St. R. 874).

In Newell on Slander and Libel (4th ed.), § 464, in reference to the right of a newspaper to comment upon court proceedings, the following appears: "The publisher must add nothing of his own. He must not state his opinion of the conduct of the parties, or impute motives therefor; he must not insinuate that a particular witness committed perjury. That is not a report of what occurred, and to this no privilege attaches." The author illustrates this proposition by the following reference to decisions of the courts: "The New York 'Evening Express' published a report stating that the plaintiff had been dismissed from the police force. Preceding the article the publishers added, 'Blackmailing by a policeman,' as a heading. In an action brought for libel it was held that this addition destroyed the privilege. Edsall v. Brooks, 17 Abb. Pr. (N. Y.) 221, 26 How. Pr. 426, 25 N. Y. Superior Ct. 29. A captain of a vessel was charged before a magistrate with an indecent assault upon a lady on board his own ship. The defendant's newspaper published a report of the case, interspersed with comments which assumed the guilt of the captain, commended the conduct of the lady, and generally tended to inflame the minds of the public violently against the accused. Held, that no privilege attached to such comments, and that the report was neither fair nor dispassionate. R. v. Fisher, 2 Camp. 563; R. v. Lee, 5 Esp. 123; R. v. Fleet, 1 B. & Ald. 379. The 'Observer' gave a true and faithful account of some proceedings in the insolvent debtor's court, but headed it with the words 'Shameful conduct of an attorney.' Held, that for those words, as they were not justified, the plaintiff was entitled to recover. Clement v. Lewis (Exch. Ch.), 3 Br. & B. 297, 3 B. & Ald. 702, 7 Moore, 200; Bishop v. Latimer, 4 L. T. 775."

2. The petition, in charging that this publication by the de-

fendant was false and was maliciously made, charged a libelous publication against the plaintiff, which, in so far as the publication charged him with being guilty of larceny of the false teeth, was actionable per se without proof of special damage; but in so far as it alleged that the publication, in charging the plaintiff with cramming into his own mouth the false teeth of another and running away with them, falsely and maliciously charges him with an act which made him the "butt of many jokes in public places and public gatherings where the plaintiff himself was present," alleged a libelous charge which exposed him to "public hatred, contempt, or ridicule, to the special damage of the plaintiff in making him the butt of many jokes," etc. Civil Code (1910), §§ 4428-4433.

3. A libelous charge that imputes to another the commission of a crime which is punishable by law and which—such as a charge of larceny—involves moral turpitude, is injurious to the person's character and reputation. It is therefore relevant to a determination of the amount of damage to the person's character and reputation that he enjoyed a reputation for honesty and upright living among his friends and those with whom he did business, and that he was a minister of the gospel and preached in various churches in the community in which the libelous publication was circulated. Where the plaintiff's petition alleged that he had enjoyed such a reputation, but does not allege any special damage to his business or occupation as a minister of the gospel, the petition is nevertheless not subject to special demurrer in that it fails to allege wherein and in what amount of damage he has suffered by reason of the injury to his reputation as a minister of the gospel.

4. Where the petition alleges that the plaintiff was, by reason of the alleged libelous publication, damaged in his business, which was that of selling wax flowers, the petition was subject to special demurrer in that it failed to allege wherein and in what amount his business was injured.

5. The allegation in the petition, that the defendant, after having been apprised of the falsity of the publication, refused to make a correction in the paper, was not subject to the special demurrer interposed, since this was an allegation as to a fact which tended to show malice or bad faith on the part of the defendant in making the publication.

6. The petition was good as against the general and special

demurrer, with the exception of the ground that the petition failed to allege wherein the plaintiff's business of selling wax flowers had been damaged by the alleged libelous publication. The judgment overruling all the grounds of the demurrer is therefore reversed.

*Judgment reversed. Jenkins, P. J., and Bell, J., concur.*

JENKINS, P. J., concurring specially. I concur in the judgment of reversal, for the reasons indicated in the majority opinion; but do not concur in the ruling that the petition set forth a cause of action based on a publication charging the complainant with an offense punishable by law, so as to render it libelous per se. Section 4432 of the Civil Code (1910) provides as follows: "A fair and honest report of the proceedings of legislative or judicial bodies, or of court proceedings, or a truthful report of information received from any arresting officer or police authorities, shall be deemed privileged communications; and in any action brought for newspaper libel the rule of law as to privileged communications shall apply." It is with the utmost deference to the feelings and sensibilities of the plaintiff that I express the views embodied by this special concurrence, dissenting from certain rulings set forth by the majority opinion; but as I see it, the publication did not, by any sort of reasonable interpretation, in and of itself accuse the plaintiff of having committed the offense of larceny, but, on the contrary, plainly and manifestly sought to report the undisputed fact that such a charge had been legally instituted against him. This is made evident at least three times in the short newspaper notice complained of. It is spoken of as a court "charge;" it is repeated that he was "arrested on a charge" in the police court; and in proceeding to narrate in more detail the charge referred to, in using the word "theft" as complained of, the report says that the "theft is said to have taken place," etc., thus plainly purporting not to formulate a charge, but merely to relate back to what had already repeatedly been said as constituting an official proceeding in the police court. It is, therefore, my opinion that after having twice plainly stated that the account was simply seeking to narrate a police-court proceeding, that, in undertaking to amplify the nature of the charge thus twice mentioned, the use of the language "the theft is said to have taken place," etc., could not, by any sort of fair, reasonable, or ordinary interpretation, be construed as meaning that the newspaper was undertaking to

formulate a charge of theft. I therefore do not think that under any possible interpretation the defendant could have been guilty of printing a libel per se by reason of having charged the complainant with the commission of a crime punishable by law.

It may be that the newspaper could have properly used the word "alleged," or its equivalent, one more time in seeking to amplify the nature of the official charge twice referred to, although to have done so would perhaps have amounted to tautology in saying that the "alleged" theft "is said" to have taken place, etc. It might reasonably be asked how often must a newspaper repeat that it is merely seeking to set forth an account of a court proceeding, or to give a truthful report of information received from an arresting officer in undertaking to narrate such a proceeding. If twice or thrice is not often enough, how many times must it be required, Individuals are entitled to the safeguards set by the law for the protection of their reputations against all persons, including newspapers, but freedom of speech and freedom of the press are equally important. To carry anything to extreme is not the spirit and purpose of the law. The plaintiff in the court below has my sympathy in having been subjected to an unfounded and somewhat ridiculous charge, but it was the court proceeding itself and not the newspaper which brought the embarrassment into being, and a newspaper is not to be expected or required to do more than other persons in abiding by the statutes enacted for the common good. Occasionally we find evidence that newspapers seem to labor under a delusion that they, unlike other people, are not privileged to report facts as facts. With no desire or purpose to interject any degree of levity in what I have to say, a familiar anecdote illustrates this idea, wherein it was printed: "It is rumored that a card party was given on yesterday at the home of Mrs. Soandso to a number of reputed ladies. It is alleged that punch was served by Mrs. Soandso, who claims to be the wife of a well-known merchant by that name." Newspapers stand like everyone else; they are not blameable for printing facts which are true, nor are they blameable for setting forth privileged communications, including "a fair and honest report of the proceedings of legislative or judicial bodies, or of court proceedings, or a truthful report of information received from any arresting officer or police authorities."

The truth is that too much reliance is put upon the words "it is rumored," "it is said," and "it is alleged," since there is a legal maxim, applying to everybody, that "tale bearers are as bad as tale makers." Except as relates to what are called privileged communications, the question is not whether somebody says a thing, even though you give your authority, but whether what is said is in fact true. In the instant case, dealing with one branch of privileged communications, a newspaper is undertaking to report the proceedings of a court or giving information received from an arresting officer or police authorities. In my opinion it is clear that in this publication narrating a police-court case there is nothing libelous per se, and that the use of the word "theft," in the manner and in the connection indicated, does not charge the complainant with a crime, but merely set forth that he had been thus accused, and I therefore dissent from my more learned bretheren in so holding.