1, 2. It was not error to sustain the demurrer to paragraphs 8 and 9 of the petition.
3, 4. It was error to sustain the demurrers to paragraph 7, 10, 11, and to the second sentence of paragraph 13, and to sustain the general demurrer to the petition.
 DECIDED NOVEMBER 9, 1940.
Roy Crowe sued the Constitution Publishing Company for libel. The petition alleged substantially the following: ". . 3. The defendant is engaged in the publication of a daily newspaper in the City of Atlanta, known as The Atlanta Constitution, and styles itself `The Daily Constitution Leads in Home Delivered, City, Trading Territory, and Total Circulation,' and also `The South's Standard Newspaper.' 4. In said county on Saturday morning, April 30, 1938, in the morning's edition of the publication of The Atlanta Constitution by the defendant, was published on the front page the following headline, to wit: `He Beat Me With Cane, Sobs "Gift" Boy Sent Off with Blind Man by Atlanta Parents.' Three news columns in width and four in depth was printed and published, `Jimmy Storey, 12, of 113 Harris Street,' at playing marbles in the Juvenile Detention Home in the City of Atlanta; and to the right of this on the front page begins the story of this boy, both of which is the subject-matter of this libelous suit brought *Page 498 
by petitioner against this defendant. 5. The defendant, on Saturday morning, April 30, 1938, was engaged in the publication and circulation of said newspaper have a large and generous circulation in Fulton County, State of Georgia, and in various parts of the United States and is circulated among foreign nations throughout the world, and by medium of exchange was circulated among many of the various newspapers of the United States and in libraries throughout the country. Said newspaper has a circulation of approximately one hundred thousand issues daily. 6. Petitioner shows that on April 30, 1938, the defendant did falsely and maliciously print and cause to be printed and published and circulated of and concerning your petitioner in the columns of the Atlanta Constitution false, libelous, slanderous, and defamatory libels of and concerning your petitioner, and said newspaper is owned, controlled, managed, printed, and published by said defendant. 7. The libel herein complained of was conspicuously printed on the front page in large black type across four news columns under the caption, `He Beat Me With a Cane, Sobs "Gift" Boy Sent off With Blind Man By Atlanta Parents.' A true copy of the photograph and the printed article are hereto and marked Exhibit A and made a part hereof. Said article recited the following: `Jimmy said yesterday that Crowe (meaning your petitioner) often whipped him with a strap and had even hit him with the walking-cane the blind man used to get about with, and had twisted his fingers and arms until tears streamed down his cheeks, and he screamed with pain. I don't want to go back to Mr. Crowe, Jimmy declared yesterday afternoon as he sat and played marbles with other boys his age at the Juvenile Detention Home. He said he would rather go back to his parents than return to the blind man who whipped him for being sassy. . . Crowe kept him up every night until 2 or 3 o'clock in the morning, writing business letters.' Petitioner shows that these alleged quotations from Jimmy's story to the reporter Frank Drake, or any one else of the Constitution, are wholly false, untrue, slanderous, malicious, and defamatory libel against your petitioner.
"8. Said article recites the following: `Mr. and Mrs. Storey, both of whom have court records, according to the juvenile authorities, are willing to let Crowe keep Jimmy, it was said,' which statement imputes that Jimmy's parents have criminal records; *Page 499 
that they were unfit and unworthy to retain the custody, possession, and control of their minor son, Jimmy; that his training in the principles of good citizenship and sane upbringings of their offspring, and being of such nature they were willing to `farm out' their son, Jimmy, to just any kind of a personage, even to one who whipped the child with a strap, beat him with a walking cane, worked him every night writing business letters until 2 or 3 o'clock in the morning, and that your petitioner was of no higher character than those who had criminal records; and this publication was false, slanderous, malicious and defamatory libel against your petitioner. 9. Said article recited the following: `Judge Watkins has authority to dispose of the case for the best interest of Jimmy. He can return the boy to his parents, or he can find a foster home for the boy if he thinks Jimmy should be removed from the influence of his parents or Crowe (who beats Jimmy with a strap, hits him with a walking-cane, twists his fingers and arms until tears stream down his cheeks, and he screams with pain, and who keeps him up every night until 2 or 3 o'clock writing business letters), which statements and innuendoes are wholly false, untrue, slanderous, malicious, and defamatory libel against your petitioner. The article recited the following: `Long Sales Trip. Jimmy was taken on a long sales trip by Crowe immediately after Mr. and Mrs. Storey gave him the boy last July, it was said,' meaning thereby to make and maintain the impression that the boy, Jimmy, was a mere slave to your petitioner's needs in the furtherance of his business. `They went through many cities and towns along the Atlantic seaboard before they settled last winter in a hotel in Norfolk. At the juvenile court hearing in Norfolk, hotel in Norfolk. At the juvenile court hearing in Norfolk, hotel employees testified they frequently heard Jimmy crying in the room and that several times he had appealed to them to `make Mr. Crowe stop hurting me,' which alleged testimony delivered at the said trial is an untrue, false, slanderous, malicious misrepresentation, and the same is a defamatory libel against your petitioner.
"10. Said article recites the following: `He was always too busy with business to play with other children during the months he was with Crowe. He had to work all the time, Jimmy said,' which quoted facts Jimmy did not say, and the same are untrue, false and libelous and seeks to and does convey the idea that petitioner was a character possessed with a slave-driving disposition and *Page 500 
the slave was Jimmy, and that your petitioner used all the numerated forces of violence to make of Jimmy your petitioner's slave, to wit: `Whipped him with a strap and even hit him with a walking-cane your petitioner used to get about with, and had twisted his fingers until tears streamed down his cheeks and he screamed with pain,' and to accentuate this alleged cruel treatment of Jimmy by your petitioner the defendant, through the `Constitution Staff Photo . . Wilson,' had Jimmy pose shooting marbles, wearing a complacent smile, and published this photograph with a three column width and a four-column depth on the front page of the defendant's public paper, and falsely and untruly and slanderously put into Jimmy's mouth, `I had rather be here in the detention home playing with the others boys. I enjoy this. It's fun;' all of which was said and done by the defendant in its effort to show the deep contrast of Jimmy `with streaming tears down his cheeks and screaming with pain' from the treatment or punishment administered to Jimmy by your petitioner, which tends to and does create an idea and impression that your petitioner toward Jimmy was unkind, tyrannical, inhuman, cruel, overbearing, and unfatherly; and this held and holds your petitioner up to public ridicule and scorn, and the same is wholly false, untrue, slanderous, malicious and defamatory libel against your petitioner. 11. The pleasing photograph of Jimmy Storey shooting marbles draped in the big black letters from above in the headline `He Beat Me With Cane,' Sobs `Gift Boy' Sent Off With Blind Man by Atlanta Parents,' as shown by their actual size in the exhibit `A' hereto attached and made a part of this paragraph, is a false, untrue, malicious, scurrilous, libelous publication against your petitioner, and does and tends to hold petitioner up to public scorn and ridicule, in that it says, here now is a happy boy as shown by the picture, whereas he was by petitioner beaten with a cane, that the boy sobbed, and was sent off by his parents with a blind man against his will or wish; and these stated facts and this picture are false, malicious, scurrilous, scandalous, and libelous against the good name and fame of your petitioner.
"12. Petitioner has been totally blind for the past twenty years. The only means of his going about in his business was to have the companionship and assistance of Jimmy Storey. Petitioner is a salesman throughout the entire southeast `selling tags, envelopes, *Page 501 
and stationery specialties' to individuals and companies who use considerable quantities. Petitioner goes to these various customers with the assistance of Jimmy Storey. Petitioner's customers read the article published by this defendant, as did other friends and strangers; and by reason of the said article in the defendant's newspaper columns published of and concerning your petitioner and by reason of the circulated articles of and concerning your petitioner by the defendant, he has been greatly humiliated and held up in public ridicule and contempt. He has been greatly injured in his good name, fame, and reputation, and has been exposed to public ridicule among his neighbors, friends, acquaintances, relatives, and to all other good citizens in the community in which he lives — Fulton County, and throughout the southeast; and by reason of the said libelous publications your petitioner on account of said libel is still suspected and believed by the unknowing public to be a man fifty years old as unkind, tyrannical, inhuman, cruel, overbearing, and unfatherly to Jimmy Storey. 13. Your petitioner was not guilty of any of the acts of cruelty set forth in said publication, nor did any of them emanate or come from Jimmy Storey. The character of your petitioner and the manner in which he did treat Jimmy Storey and the affection that existed between the two and the fatherly consideration of Jimmy Storey was fully established in the juvenile court of Fulton County before the honorable Garland Watkins, which finding is hereto attached and marked Exhibit `B' and made a part hereof, but said judgment of the juvenile court of Fulton County has never been circulated and is unknown to the general reading public. 14. Your petitioner, whose good name and reputation for kindliness, fatherliness, and appreciativeness of childhood, which he has heretofore regarded as his most valuable asset in his possession, now finds by reason of said false and libelous publication his name to be a byword and a reproach, and on account of said publication your petitioner says that he has been damaged in the sum stated."
Attached to the petition was a photostatic copy of the article in question. The headline of the article covers approximately seven inches, or four columns, as follows:
"He Beat Me With Cane, Sobs `Gift' Boy Sent Off With Blind Man by Atlanta Parents." Immediately under this headline appears a picture approximately five by seven inches, depicting a boy *Page 502 
playing marbles. Directly under the picture appears the following: "Jimmy Storey, 12, of 113 Harris Street, is playing marbles here, but Monday morning he will be principal actor in a drama to be enacted in the Fulton juvenile court. Juvenile authorities assert Jimmy was given by his parents, Mr. and Mrs. J. L. Storey, to Roy Crowe, blind salesman, who is charged with twisting the boy's arm until he cried." The news article appears to the right of the picture with a subhead and by-line, as follows: "Lad is Turned Over to Court Here After Tale of Cruelty in Norfolk. By Frank Drake. An Atlanta mother's and father's gift of their 12-year old son to a blind man, who is charged with mistreating the boy, will be aired Monday morning before Judge Garland M. Watkins. The boy, Jimmy Storey, is the son of Mr. and Mrs. J. L. Storey, of 113 Harris Street, who, court attaches said, gave him to Roy Crowe, sightless salesman, last July, to act as the blind man's guide. Jimmy said yesterday that Crowe often whipped him with a strap, and had even hit him with a walking-cane the blind man used to get about with, and had twisted his fingers and arms until tears streamed down his cheeks and he screamed with pain. The case came to the attention of the juvenile authorities in Norfolk, Va., last week when W. S. Rackley, Norfolk barber, charged he saw the blind man take Jimmy up a street near the hotel where the barber worked and twist the boy's arm until he cried. Norfolk juvenile officials sent Jimmy to Atlanta Tuesday and he was taken immediately into the custody of the juvenile court here. Officials here said Crowe plans to fly to Atlanta this week and to protest taking the boy away from him. `I don't want to go back with Mr. Crowe,' Jimmy declared yesterday afternoon as he sat and played marbles with other boys his age at the juvenile detention home. He said he would rather go back to his parents than return to the blind man who whipped him for being `sassy.' Crowe kept him up every night until 2 or 3 o'clock in the morning writing business letters, Jimmy said. The blind man twisted his arm when he did not want to write home to his parents last week, the boy asserted. Mr. and Mrs. Storey, both of whom have court records, according to juvenile authorities, are willing to let Crowe keep Jimmy, it was said."
"Judge Watkins has authority to dispose of the case for the best interest of Jimmy. He can return the boy to his parents, or he *Page 503 
can find a foster home for the boy if he thinks Jimmy should be removed from the influence of his parents or Crowe. Miss Cleveland Zahner, of the children's bureau of the Fulton County welfare department, filed the petition with the juvenile court here charging `insufficient guardianship' for Jimmy. She stated records showed Jimmy was not in school at any time during the past year, when Crowe had agreed to educate the boy. Jimmy was `subjected to cruel and inhuman' treatment while he was with Crowe, the petition states. Jimmy was taken on a long sales trip by Crowe immediately after Mr. and Mrs. Storey gave him the boy last July, it was said. They went through many cities and towns along the Atlantic seaboard before they settled last winter in a hotel in Norfolk. At the juvenile court hearing in Norfolk, hotel employees testified they frequently heard Jimmy crying in the room and that several times he had appealed to them to `make Mr. Crowe stop hurting me.' Jimmy said yesterday Crowe twisted his arm and mashed his fingers when he wanted to punish him. He was always too busy with business to play with other children during the months he was with Crowe, he said. The blind man arose late in the morning, took Jimmy with him on calls during the afternoon and wrote letters every night until early morning, the boy said. Crowe declared in Norfolk he was educating Jimmy by having the boy read the newspapers to him every day. He was also teaching him business, he added, by having Jimmy help him with his letters. He had to work all the time, Jimmy said. `I had rather be here in the detention home playing with the other boys,' said the boy. `I enjoy this. It's fun.' The boy's mother visited him once since he came back and several of his sisters and brothers are to come to see him, he said. The Storeys have five other children."
The plaintiff filed the following amendment: "8a. Said article recited the following: Miss Cleveland Zahner, of the children's bureau of the Fulton County Welfare Department, filed the petition with the juvenile court here, charging `insufficient guardianship' for Jimmy. She stated records showed Jimmy was not in school at any time during the past year, when Crowe had agreed to educate the boy. Jimmy was `subjected to cruel and inhuman' treatment while he was with Crowe, the petition states." The facts set forth in the above referred to petition by Miss Zahner are that *Page 504 
"Petitioner is informed that one Roy Crowe . . from whom this child was taken . . by an order of the juvenile court of Norfolk, Virginia, on account of his neglect, and mistreatment of it, after hearing had thereon, has arrived . . in Atlanta, from Norfolk, for the purpose of seizing and carrying the child away with him, . . and thus continue to keep it out of school and to undergo further neglect and mistreatment at his hands. The statements made in said publication as to the `insufficient guardianship' for Jimmy, and that `Jimmy was subjected to cruel and inhuman treatment while with Crowe,' the petition states `were published of and concerning your petitioner; and these published statements were false, slanderous, malicious, and defamatory libel against your petitioner.'"
Exhibit "B" attached to the petition is the order of the juvenile court finding that the child, who had been made a ward of the court, had not been mistreated by Crowe, and that the child was anxious to return to him, and that from the legal and other evidence submitted the welfare of the child would be best served by awarding the child to Crowe; and it was so ordered.
The defendant filed the following demurrer: "1. Said petition sets forth no cause of action against the defendant, and no cause of action is there set forth. 2. Defendant demurs to and moves to strike paragraph 7 of the petition, upon the ground that the words therein mentioned are not libelous as to petitioner, and that they set forth no cause of action against this defendant. 3. Defendant demurs to and moves to strike paragraph 8, upon the ground that the language therein quoted does not libel the petitioner, and that no innuendo can be drawn therefrom to indicate that said language was libelous as to petitioner. 4. Defendant demurs to and moves to strike the first paragraph of paragraph 9, upon the ground that the language therein quoted does not libel the petitioner, and that no innuendo can be drawn therefrom to indicate that the said language was libelous to the petitioner. 5. Defendant demurs to and moves to strike the second paragraph of paragraph 9, upon the ground that the language therein quoted does not libel the petitioner, and that no innuendo can be drawn therefrom to indicate that the said language was libelous to the petitioner. 6. Defendant demurs to and moves to strike the second paragraph of paragraph 9, upon the ground that it positively *Page 505 
appears that the language complained of was a correct report of testimony given in a judicial proceeding, that there was no malice, and that therefore the alleged statement is privileged and can not authorize a recovery in this case. 7. Defendant demurs to and moves to strike paragraph 10, upon the ground that the language therein quoted does not libel the petitioner, and that no innuendo can be drawn therefrom to indicate that the said language was libelous to petitioner. 8. Defendant demurs to and moves to strike paragraph 11, upon the ground that the language therein quoted does not libel the petitioner, and that no innuendo can be drawn therefrom to indicate that the said language was libelous as to petitioner. 9. Defendant demurs to paragraph 13, upon the ground that the second sentence thereof and Exhibit `B' are irrelevant and immaterial to this cause of action, and should be stricken because it deals with an order passed after the occurrence of the alleged libel in this case, and because the said order, if passed at all, was passed in a proceeding to which this defendant was not a party, and because the said order is not binding upon this defendant herein. 10. Defendant moves that petitioner be required to rewrite his petition so as to eliminate from the jury and from this case those parts thereof which refer to Exhibit `B,' so that the jury may not see this evidence, which is not properly admissible and is prejudicial to defendant."
The judge passed the following order: "This suit is based upon an alleged libel consisting of an article published in the Atlanta Constitution, a newspaper. The child referred to in the article was sent to Atlanta by the juvenile court of Norfolk, Virginia, and was immediately taken into custody by the juvenile court of Atlanta. The newspaper story contains statements made by the child while in the custody of the juvenile court, by a member of a welfare agency who had caused the case to be brought to the attention of the juvenile court, by officials connected with the court, and of statements made in the petition filed in the juvenile court. Upon consideration of the demurrer filed by the defendant to plaintiff's petition, it is ordered and adjudged as follows: 1. Paragraph 2 of the demurrer is sustained. The language referred to relates to a statement of the child being held in custody of the juvenile court. It does not appear that the statement was malicious or an unfair presentation of the remarks of the child. 2. *Page 506 
Paragraph 3 of the demurrer is sustained, and paragraph 8 of the petition is stricken. 3. Paragraphs 4, 5, 6 of the demurrers are sustained, and paragraph 9 of the petition is stricken. 4. Paragraph 7 of the demurrer is sustained, and paragraph 10 of the petition is stricken. 5. Paragraph 8 of the demurrer is sustained, and paragraph 11 of the petition is stricken. 6. Paragraph 9 of the demurrer is sustained, and paragraph 13 of the petition is stricken. 7. Paragraph 10 of the demurrer is not now passed upon. 8. The allegations of the petition must be considered in the light of the article itself, a copy of which is attached to the petition. It appears that every statement made, complained of in the petition, was made in an unprejudiced publication of the statement of the child then in custody and awaiting a hearing before the court, or of a member of the welfare agency presenting the case to the court, or of an officer of the court, or a statement from the petition filed in the court. The court is of the opinion that the article itself is not actionable as for libel. Wherefore paragraph 1 of the demurrer is sustained, and the case is dismissed." To this judgment the plaintiff excepted.
1. It was not error to sustain the demurrer to paragraph 8 of the petition, because it alleges no libel against the plaintiff.
2. It was not error to sustain the demurrers to paragraph 9 of the petition. The only statements which are susceptible of being construed as defamatory were statements purporting to come from witnesses at a trial at Norfolk, and it was not alleged that these statements were not actually made by the witnesses exactly as stated in the publication.
3. It was error to sustain the demurrer to the second sentence of paragraph 13 of the petition, which contains matter irrelevant to the alleged original libel, because the matter was relevant to the question of the good faith of the defendant in the publication complained of. Augusta Chronicle Publishing Co. v. Arrington,42 Ga. App. 746 (5) (157 S.E. 394). The first sentence of paragraph 13 was not subject to demurrer.
4. It was error to sustain the demurrer to paragraphs 7, 10, 11, and to sustain the general demurrer to the petition. The republication of the statements of Jimmy Storey, if libelous, would not *Page 507 
be privileged, because the statements were not made by him in a court trial. The mere fact that Jimmy was detained at the juvenile home at the time the statements were made would not render the statements privileged. The bearer of a libel is as guilty as its author, so far as publication is concerned. 36 C. J. 1235; Kirkland v.Constitution Publishing Co., 38 Ga. App. 632 (144 S.E. 821).
The Code declares: "Whoever shall torture, torment, deprive of necessary sustenance, mutilate, cruelly, unreasonably, and maliciously beat or ill treat any child, or cause any of said acts to be done, shall be guilty of a misdemeanor." § 26-8001. It will be noted that no mention is made of justification. It would therefore become an affirmative defense. What is cruel and unreasonable treatment of a child is primarily a question for a jury. While no malice was charged to Crowe, it was a question for the jury whether the treatment attributed to Crowe was so actuated. Under the allegations in this case it is a jury question whether the newspaper charged the commission of a crime. The Code further declares: "Any false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of any individual and expose him to public hatred, contempt, or ridicule, shall constitute a newspaper libel, the publication of such libelous matter being essential to recovery." § 105-703. So whether the language quoted charges the commission of a crime or not, it is a question for the jury whether it tended to injure the reputation of Crowe and to expose him to public hatred, contempt or ridicule. It is peculiarly within the province of a jury to say what is or what is not proper and humane punishment. This court can not say as amatter of law that the treatment alleged in this case is not cruel, unusual, or inhumane. In Geisler v. Brown,6 Neb. 254, cited by the defendant, the following language was held not to be libelous per se: "Last night Mrs. Geisler beat her little stepdaughter most unmercifully with a club as large as a man's wrist, striking her over the head and making the blood flow freely. The little girl ran away from her as soon as she could free herself, and went to Marshal Thomas's house, weeping bitterly, her clothes saturated with blood and the wounds on her head still bleeding profusely. The marshal was not at home; so she went to the store of C. H. Mickelson, and from there over to Judge Dickey's *Page 508 
drug-store. The judge told sheriff Moore to take the girl to Mickelson's house and keep her there until called for. This Mickelson will probably do if Geisler does not get her away. It is time that Geisler and his brutal wife were put under bonds not to whip that girl; and it is time some one took care of the little girl, who is not over nine years of age. There has been trouble enough over her, and we hope the authorities will put a stop to it." Merrill in his book on Newspaper Libel, makes the statement that Mr. Bigelow, in his notes on Odgers Libel and Slander, calls the ruling in the Geisler case a "vicious doctrine."
The amendment alleges that the article falsely and maliciously stated that the petition filed with the juvenile court charged Crowe with cruelly and inhumanely treating the boy. The allegation is good against general demurrer. The amendment only purports to set forth excerpts from the juvenile-court petition, but there is no special demurrer calling for the setting forth of the entire petition.
Judgment reversed. Stephens, P. J., and Sutton, J.,concur.