397 P.2d 719

Cynthia VIGIL, a minor, by her next friend, Lucian Vigil, Plaintiff-Appellee,

v.

L. G. RICE, Jr., Defendant-Appellant.

No. 7480.

Supreme Court of New Mexico.

Dec. 21, 1964.

Modrall, Seymour, Sperling, Roehl & Harris, Frank H. Allen, Jr., Albuquerque, for appellant.

George W. Jones, O. R. Adams, Jr., Albuquerque, for appellee.

CHAVEZ, Justice.

This is an appeal from a judgment awarding plaintiff-appellee compensatory and punitive damages.

On February 28, 1962, Cynthia Vigil, a minor, by her next friend Lucian Vigil, filed a complaint in two counts against L. G. Rice, Jr. In the first count, plaintiff alleged that Cynthia Vigil was born September 6, 1947, the daughter of Lucian Vigil, and that defendant was a medical doctor; that on October 17, 1960, plaintiff was suffering from an infection of her foot and, on said date, defendant undertook to examine and treat plaintiff for said ailment; that defendant failed to use reasonable care or skill in the examination and treatment and, with gross negligence and reckless disregard of the condition and needs of plaintiff, defendant failed to properly examine said foot, determine the cause or nature of said ailment, or prescribe any medicine or treatment for the cure of said ailment, all of which could have been done by the use of reasonable care and skill.

In the second count of the complaint, plaintiff alleged that, due to said ailment, the parents of plaintiff requested that the Albuquerque public schools furnish a teacher to teach plaintiff at her home during her illness; that, pursuant to said request, the Albuquerque public schools made a request to defendant for a report and diagnosis of the illness or injury of plaintiff. It was then alleged:

"IV. That on or about ~~November~~ Oct. 28, 1960 (Amendment allowed 5–13–63, D.M.) the defendant libeled the plaintiff, who was at all times unmarried, by falsely stating that the plaintiff was pregnant, in a report, a true copy of which is attached hereto as Exhibit A, and made a part hereof; and the plaintiff was not pregnant and was chaste, and the defendant at no time even examined the plaintiff for pregnancy or made any examination

relative thereto; and said false statement did not cover any illness or injury of the plaintiff, and was not within the scope of any inquiry or report requested of the defendant, ~~and in making said false statement the defendant did not act in good faith~~ (stricken by court 5-14-63, D.M. Jr.) and said statement was made recklessly, maliciously, and with gross negligence, and without reasonable or probable cause, and with wanton disregard of the rights and interests of the plaintiff."

Plaintiff alleged that this false report was submitted by defendant to the principal of John Adams Junior High School, where plaintiff was enrolled, to the Albuquerque public schools and to the board of education of the city of Albuquerque; that after said report was made, and its falsity was well known to defendant, he was requested at various times to either correct, withdraw, renounce or repudiate the false statement, which he wilfully, maliciously and recklessly failed to do; and that plaintiff had been damaged. Plaintiff prayed for both compensatory and punitive damages.

In his answer, defendant alleged: (1) That the complaint fails to state a claim upon which relief can be granted; (2) that he denies all material allegations on both counts of the complaint; and (3) that, as an affirmative defense, he asserts that he was under a qualified privilege and, therefore, plaintiff may not recover under the second count.

On May 13, 1963, trial was held before a jury which, as to the first count, returned a verdict for defendant. As to the second count, it found for plaintiff and awarded $2,000 compensatory damages and $5,000 punitive damages. On June 11, 1963, judgment was entered and from said judgment appeal timely followed.

The facts reveal that plaintiff, at the time of the incidents here related, was an unmarried thirteen-year-old girl, attending John Adams Junior High School in Albuquerque, New Mexico. She developed a foot infection or fungus which required medical treatment. The family doctor was the defendant Dr. L. G. Rice, Jr., a physician who has practiced medicine in Albuquerque for 28 years. On October 17, 1963, plaintiff's mother took plaintiff to the office of defendant, who diagnosed her ailment as athlete's foot, an ailment with which the defendant was familiar. Thereafter, plaintiff's foot became worse and her parents, because of their concern for her continued school absence, requested a home teacher. The procedure for fulfilling these requests is that the request is referred to the special education department of the Albuquerque public schools, which sends a report form to

the attending physician. The physician is requested to make a report, as to the diagnosis and treatment of the ailment, and return the form to the special education department, which then makes a decision on the request.

In conformity with established procedure, the Vigils' request was sent to the special education department, which sent a report form to defendant. The form was returned by defendant, completed in the following manner:

"John Adams

"SPECIAL EDUCATION DEPARTMENT
ALBUQUERQUE PUBLIC SCHOOLS

"TO: Dr. ___Rice, Jr.___  RE: _____Cynthia Vigil_____

___317 Edith, NE___  ___328 62nd NW___  Name

___City___  B.D. ___9-6-47___  Address

"The parents of ___Cynthia Vigil___ have requested special home teaching service for her ~~him~~. Before we assign a special teacher, we need the following information about this student.

"1. Diagnosis of illness or injury _____ Pregnancy _____

"2. Is this condition contagious and/or infectious? _____ No _____

"3. When, approximately, should this student return to ~~his~~ her regular school? _____ No loss of time _____

"4. What restrictions, if any, should be placed on the amount or type of home study? _____ None _____

"Comments _____ Examination only _____

"Please sign and return this form to the Director of Special Education, Albuquerque Public Schools, Box 1719, Albuquerque, New Mexico

___/s/ L. G. Rice, Jr., M.D.___
Physician's signature  "

———◇———

This form was returned to Marian Barefoot, the director of the special education department, who read its contents and immediately notified Elmer L. Bass, principal of John Adams Junior High School, and his assistant Gladys Brainard.

Because of the delay in obtaining a home teacher, Mrs. Vigil inquired and was told by

Mr. Bass of the contents of the doctor's report. Mr. and Mrs. Vigil went to the principal's office where they tried to obtain the report or, in the alternative, have the report destroyed. The school authorities refused to do either and Mrs. Vigil telephoned defendant personally, requesting him to correct or retract the report. Defendant told Mrs. Vigil that he checked his files and found nothing that would indicate that he made such a report, but if she would bring the letter in, he would do what he could to correct any error, if he had made an error. Several times after that Mrs. Vigil tried to talk to defendant and, being unable to do so, talked to defendant's nurse, requesting that the report be corrected. Finally, in protest, the Vigils refused to pay their bill until the report was corrected. In response to this, defendant turned the debt over to a collection agency. Mrs. Vigil telephoned defendant's nurse again, asking her "to call the school and clear this record," and the bill was paid. The next day Mrs. Vigil again called the nurse, asking why they had not called the school, and was told by the nurse that they had not called the school and that they were not going to. Thereupon, the Vigils resorted to legal action, culminating in this appeal.

■ The parties are in agreement that the statement made in the case at bar is libelous per se.

■ The result from the unprivileged publication of defamatory words actionable per se is that malice is implied or presumed to exist and, ordinarily, no actual or express malice need be established in order to entitle the injured person to recover the actual damages he has sustained. 53 C.J.S. Libel and Slander § 76, p. 125.

Thus, we are brought to the issues raised by this appeal, appellant contending:

"I. The Court erred in not granting a directed verdict in favor of the defendant.

"II. The Court erred in submitting the question of punitive damages to the jury.

"III. The Court erred in its instructions Nos. 33–B and 36 and in its failure to give defendant's requested instruction No. 16."

Appellant contends that, before the defense of qualified privilege is lost, appellee must prove actual malice and that appellee has failed to overcome the burden placed upon her to prove that actual malice did exist. Appellant cites Colbert v. Journal Publishing Company, 19 N.M. 156, 142 P. 146; Ward v. Ares, 29 N.M. 418, 223 P. 766; and White v. Morrison, 62 N.M. 47, 304 P.2d 572, in support of this contention.

Appellee's position is that (1) the qualified privilege was destroyed and ceased to

exist, and (2) that even if the qualified privilege continued to exist, it has been overcome by the malice found by the jury. Appellee also contends that she has proved malice, the proof being the failure of appellant to retract or correct his statement, and further, that she has support in the law by our statement in White v. Morrison, supra, where we said:

"* * * Appellee insisted she be accorded a hearing on the charge, which was denied. Her request that appellant publicly retract the statement also was ignored. She was never afforded a hearing. These facts are sufficient to justify an inference of malice."

Appellant raised the defense that the report in question was made under a qualified privilege and the trial court defined a qualified privilege. The trial court instructed the jury that since the report was requested:

"* * * a qualified or conditional privilege did exist at the outset, and if this privilege was not destroyed by acts of the defendant, or his failure to act, the plaintiff must prove the requisite malice to overcome the privilege and be entitled to any recovery for libel."

The jury was also instructed that, to recover punitive damages, actual malice must be proved by appellee.

In Ward v. Ares, supra, we said:

"The books say that a qualified privilege, such as that contended for here, does not give absolute immunity from responsibility for libelous words, but has the effect merely of taking away from the libelous language the presumption of malice in their publication, and casts upon the plaintiff the burden of proving actual malice. * * *".

The main question raised by this appeal, its answer being determinative of the three contentions raised by appellant, is whether appellant, Dr. Rice, once the report was brought to his attention, had the affirmative duty to correct it, and was the failure to fulfill his duty evidence of malice sufficient to destroy the qualified privilege?

In Palmer v. New York News Pub. Co., 31 A.D. 210, 52 N.Y.S. 539, the court said:

"* * * But, in addition to that, there was evidence from which the jury might have found that there was express malice in this publication. It appeared that the plaintiff, before bringing his action, had made an effort to obtain a retraction, but that the effort was entirely futile. All that he succeeded in getting was that, if he could furnish proof of the untruthfulness of the article, the defendant would be very happy to make such retraction as might be just and proper in the premises. The presumption was that

the article was false, and when the defendant was called upon to make a retraction of it it was its duty, unless it had reason to believe that the article was true (and of that there is no claim), to retract the charge as fully and broadly as it had been made. A refusal to do this, coupled with the manner of the publication, would clearly warrant the jury in coming to a conclusion that the article was published wantonly at least, and with utter disregard of the rights of the plaintiff. * * *"

See also, Stokes v. Morning Journal Ass'n, 72 A.D. 184, 76 N.Y.S. 429.

In Fessinger v. El Paso Times Co. (Tex. Civ.App.1913), 154 S.W. 1171, the defendant newspaper, after recklessly and carelessly making statements libeling plaintiff, published, at plaintiff's request a correction written by plaintiff. The court held that, while malice may be shown by evidence of personal ill will or animosity, or may be inferred where the libelous article was recklessly or carelessly published, the publishing of plaintiff's correction of the original article was, in itself, a circumstance tending to rebut any inference of malice arising from the reckless and careless act on defendant's part in publishing the original article.

It has been held that the refusal to make a correction, after having been apprised of its falsity, is evidence which tends to show malice or bad faith on the part of the defendant in making the publication. Augusta Chronicle Pub. Co. v. Arrington, 42 Ga.App. 746, 157 S.E. 394.

In 53 C.J.S. Libel and Slander § 213c, p. 320, it is said:

"The defendant's refusal to retract on request is admissible to show malice."

See also, Metropolis Co. v. Croasdell, 145 Fla. 455, 199 So. 568; Augusta Chronicle Pub. Co. v. Arrington, supra.

We hold that evidence to show the defendant's refusal to retract is permissible to show malice. We have reviewed the record and find that the evidence is substantial to support and warrant a finding by the jury that actual malice was present, and we shall not reverse that finding.

Accordingly, we hold that the trial court did not err in refusing to direct a verdict for defendant; nor did it err in submitting the question of punitive damages to the jury; nor did it err in instructions Nos. 33–B and 36, and its failure to give defendant's instruction No. 16.

There being no error, the judgment is affirmed.

It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.